wo

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **Kevin A Osborn,**<br>Plaintiff<br>-vs-<br>**Ivan Bartos, et al.,**<br>Defendants | CV-08-2193-PHX-ROS (JRI)<br><br>**ORDER** |

Under consideration is Plaintiff's Motion to Compel Discovery, filed June 3, 2010 (Doc. 161). Plaintiff seeks an order compelling responses to a variety of discovery, alleging either that Defendants' objections to the requests were waived by failing to timely respond, the objections were baseless, or the responses inadequate.

Defendants have responded (Doc. 183) arguing that the objections were not waived by late responses, or that the lateness should be excused, or that the Court should *sua sponte* limit the discovery. Defendants also argue the merits of their various objections.

Plaintiff replies (Doc. 186) that the Defendants miscalculate which responses were delinquent, and that the objections are without merit.

## 1. BACKGROUND

**Nature of Case** - Plaintiff's original Complaint (Doc. 4) asserted eight counts, and on screening Counts 5 and 6 were dismissed. (Order 12/5/08, Doc. 9.) Plaintiff filed a Motion to Amend (Doc. 38), seeking to file his First Amended Complaint, which reasserted the surviving counts, reworked the dismissed counts, and added four new counts. The motion to amend was granted. (*See* Order 6/22/09, Doc. 67.)

Plaintiff's First Amended Complaint, filed July 2, 2009, asserts twelve claims:

(1)     Plaintiffs Eighth Amendment rights were violated when Defendant Ramos

refused to recommend Plaintiff for protective segregation status;

(2)     Plaintiffs Eighth Amendment rights were violated when Defendant Palossari refused to recommend Plaintiff for protective segregation status;

(3)     Plaintiffs Eighth Amendment rights were violated when Defendant Haley denied Plaintiff's request for protective segregation status;

(4)     Plaintiff's Eighth Amendment rights were violated when Defendant Bartos denied Plaintiff's appeal of the denial of protective segregation status;

(5)     Plaintiff's Eighth Amendment rights were violated through deliberate indifference to Plaintiff's safety as a result of ADOC officers telling other inmates that Plaintiff was an undercover FBI agent tasked to watch an inmate with prison gang and mafia ties, a sex offender, a rapist, a child molester, a child killer, etc.

(6)     Plaintiff's Eighth Amendment rights were violated through deliberate indifference to Plaintiff's safety, when ADOC officers Marten and Kohl identified Plaintiff as a protective custody inmate, confidential informant, undercover police officer, or the cause of various searches and yard closures.

(7)     Plaintiff's Eighth Amendment rights were violated when, over a period of three months, Defendants Does refused to provided him with medical treatment for staph infection, despite Plaintiff's numerous requests; and

(8)     Defendants Markley and Schriro formed a policy or custom of routinely denying requests for protective segregation status without regard to the risks to individual inmates.

(9)     Plaintiff's Eighth Amendment rights were violated through deliberate indifference to Plaintiff's need for basic human necessities when Defendant Kauffman and other unknown defendants denied Plaintiff warmth, laundry, recreation, showers, lighting, etc.

(10)    Plaintiff's First Amendment rights were denied because the conduct complained of in Counts I through IX was motivated by a desire to retaliate

1    against Plaintiff for making complaints.

2    (11)   The actions complained of in Counts 1 through 10 constitute a denial of

3           substantive due process.

4    (12)   Plaintiff's Eighth Amendment rights were violated because the actions

5           complained of in Counts 1 through 10 were conducted with the purpose of

6           causing him harm.

7    Answers have been filed by Defendants Bartos, Ramos, Palossari, Haley, Markley,

8    Schriro, Marten, Cole ("Kohl"), Kaufman, and Cardenas.

9    **Discovery Requests & Disputes** - Plaintiff has propounded a Request for Production

10   on defendants generally, and a series of discovery on Defendants Ramos, Bartos, Palossari,

11   Markley, Kaufman and Cardenas, including Requests for Production, Non-uniform

12   Interrogatories, and Requests for Admission.

13   Plaintiff provided notice of disputes among the parties that had not been resolved after

14   consultation, and the parties conducted a telephonic conference with the Court about the

15   disputed discovery on April 23, 2010.  (M.E. 4/23/10, Doc. 144.)  As a result of that

16   conference, Defendants were given a deadline to provide various proposed supplements, and

17   Plaintiff was given permission thereafter to file his motion to compel.

18   **Delinquent Responses** - Plaintiff asserts that a series of responses were served after

19   the deadline, and thus any objections are waived.  Defendants concede that the responses to

20   eight sets of discovery were served late, and that at least four have had no response at all.[1]

21   (Response, Doc. 183 at 6.)

22   Timely responses are critical to preservation of a party's objections to interrogatories

23   and requests for admissions.  Federal Rule of Civil Procedure 33(b)(2) provides that a

24   "responding party must serve its answer and objections within 30 days after being served

25

26   [1] Defendants nonetheless contend that "[r]esponses have been served to *all* discovery
     requests" (*id.* at 10).  No evidence of service of responses to interrogatories to Defendan
27   Palossari has been provided.  Defendants reference their Paragraph 15 for the proposition that
     various responses are only "arguably late" (*id.* at 11), but the referenced paragraph simply
28   discusses Plaintiff's motion to supplement the complaint (*id.* at 5).

with the interrogatories."  Rule 33(b)(4) specifically provides that any ground for objection "not stated in a timely objection is waived, unless the court, for good cause, excuses the failure."  Rule 36(a)(3) provides that a "matter is admitted unless, within 30 days after being served, the party to whom the request is directed served on the requesting party a written answer or objection addressed to the matter."

No waiver is provided for with regard to requests for production.  Rather, Rule 34(b)(2)(A) simply requires a response, including objections, be served "within 30 days after being served."

Defendants argue that only two responses were late.  The record reflects a vastly different story.

1st RFP - Plaintiff's first Request for Production was served by mail on April 3, 2009. (Not. Serv. 4/5/09, Doc. 47.)  Under Rules 34(b)(2) and 6(d), Defendants had a total of 33 days to respond, making their response due May 6, 2009.  Defendants' response was served May 11, 2009.  (Not.Serv. Doc. 59)   Thus, Defendants' response was some five days **delinquent**.

Ramos RFA - Plaintiff's first Request for Admissions on Defendant Ramos was served by mail on April 27, 2009.  (Not. Serv. 4/30/09, Doc. 55.)  Under Rules 36(a)(3) and 6(d), Defendants had 30 plus an additional 3 days to serve responses, making them due by June 1, 2009.  Defendants did not serve their responses until June 2, 2009.  (Not.Serv. 6/8/9, Doc. 64.)  Thus, Defendants' response was one day **delinquent**.

Ramos NUIs - Plaintiff's first set of interrogatories on Defendant Ramos was served by mail on May 5, 2009.  (Not. Serv. 5/07/09, Doc. 57.)  Under Rules 33(b)(2), 33(b)(4), and 6(d), Defendants had 30 plus an additional 3 days to serve responses, making them due by June 8, 2009.  Defendants served their responses on June 4, 2009.  (Not. Serv. 6/8/9, Doc. 64.)  Thus, Defendants' response was **timely**.

Bartos RFP, NUI, RFA - Plaintiff's Request for Production, Interrogatories, and

Request for Production on Defendant Bartos were served by mail on June 20, 2009.[2] (Motion, Doc. 161 at 5; Response, Doc. 183 at 6.)  Under the rules, Defendants had a total of 33 days to respond, making their responses due July 23, 2009.  According to Defendants, their responses were not served until July 13, 2010 (RFP), August 11, 2009 (RFA), and February 10, 2010 (NUI), respectively.  (Response, Doc. 183 at 6.)  Thus, Defendants' responses were some 355, 19, and 202 days **delinquent**.

Palossari RFP, RFA NUI - Plaintiff's Request for Production, Interrogatories, and Request for Production on Defendant Palossari were served by mail on August 18, 2009.[3] (Motion, Doc. 161 at 5; Response, Doc. 183 at 6.)  Under the rules, Defendants had a total of 33 days to respond, making their responses due Monday, September 21, 2009. Defendant's responses to the Requests for Admissions were not served until September 22, 2009 (Not.Serv. 9/28/09, Doc. 93).  Defendant's responses to Requests for Production were not served until July 21, 2010, as attachments to the response to the motion to compel.[4] (Response, Doc. 183 at Exhibit L.)  Defendant has yet to respond to the Interrogatories. (Response, Doc. 183 at 6.)  Thus, Defendants' responses were or are all **delinquent**.

Markley RFP, RFA, NUI - Plaintiff's Request for Production, Interrogatories, and Request for Production on Defendant Markley were served by mail on September 16, 2009.[5] (Motion, Doc. 161 at 5; Response, Doc. 183 at 6.)  Under the rules, Defendants had a total of 33 days to respond, making their responses due October 19, 2009.  Defendant's responses

---

[2]  The Notice of Service filed by Plaintiff reflects service on June 18, 2009.  (Not. Serv. 6/23/09, Doc. 69.)  The Court relies upon the more liberal date agreed upon by the parties.

[3]  The Notice of Service filed by Plaintiff reflects service on August 17, 2009.  (Not. Serv. 8/20/09, Doc. 86.)  The Court relies upon the more liberal date agreed upon by the parties.

[4]  No notice of service of these responses has been filed.

[5]  The Notice of Service filed by Plaintiff reflects service on September 15, 2009. (Not. Serv. 9/18/09, Doc. 92.)  The Court relies upon the more liberal date agreed upon by the parties.

to the Requests for Admissions were served September 22, 2009 (Not.Serv. 9/28/09, Doc. 93) and were timely.  His responses to Request for Production and Interrogatories were not served until July 21, 2010, as attachments to the response to the motion to compel.[6] (Response, Doc. 183 at Exhibit L.)   Thus, Defendants' responses to the Requests for Admission were **timely** but responses to the balance are all **delinquent**.

Kaufman RFP, RFA, NUI - Plaintiff's Request for Production, Interrogatories, and Request for Production on Defendant Kaufman were served by mail on March 4, 2010. (Motion, Doc. 161 at 5; Response, Doc. 183 at 6; Not. Serv. 3/9/10, Doc. 130.)  Under the rules, Defendants had a total of 33 days to respond, making their responses due April 8, 2010.  According to Defendants, their responses were not served until April 12, 2010, April 12, 2010, and April 13, 2010, respectively.  (Response, Doc. 183 at 6.)  Thus, Defendants' responses were some 4 or 5 days **delinquent**.

Cardenas RFP, NUI - Plaintiff's Request for Production, and Interrogatories on Defendant Cardenas were served by mail on March 14, 2010.[7]  (Motion, Doc. 161 at 5; Response, Doc. 183 at 6; Not. Serv. 3/16/10, Doc. 132.)  Under the rules, Defendants had a total of 33 days to respond, making their responses due April 16, 2010.  According to Defendants, their responses were served April 12, 2010.  (Response, Doc. 183 at 6.)  Thus, Defendants' responses were **timely**.

Summary - Thus, with the exception of the Interrogatories to Ramos, the Requests for Admissions to Markley, and the discovery to Cardenas, Defendants' responses to all other of these discovery requests were delinquent.  Thus, under the rules, any objections asserted in the delinquent responses to interrogatories and requests for admission were waived, including those in the Requests for Admission to Defendants Ramos, Bartos, Palossari, and Kauffman, and the Interrogatories to Defendants Bartos, Palossari, Markley, and Kaufman.

---

[6] No notice of service of these responses has been filed.

[7] The Notice of Service filed by Plaintiff reflects service on June 18, 2009.  (Not. Serv. 6/23/09, Doc. 69.)  The Court relies upon the more liberal date agreed upon by the parties.

1    In addition, responses to the Requests for Production to Defendants generally and to

2    Defendants Bartos, Palossari, Markley and Kaufmann were or are delinquent.

3

4    **2.  WAIVER OF OBJECTIONS BY DELINQUENT RESPONSES**

5            Defendants argue that the matter is moot because the responses were filed prior to the

6    motion to compel.  While the service of responses in relation to a motion to compel is

7    relevant to an award of expenses, *see* Fed. R. Civ. P. 37(a)(5), it does not automatically moot

8    a motion to compel, especially one based upon a failure to provide timely objections.  If

9    service of responses prior to a motion to compel were all that was required to avoid a waiver,

10   then the deadlines in Rules 33, 34, and 36 would be all but meaningless.

11           **Delinquent Responses to Interrogatories** - Responses to Interrogatories to

12   Defendants Bartos, Palossari, Markley, and Kaufman were delinquent.  Rule 33(b)(4)

13   authorizes the Court to excuse a delinquent objection to interrogatories "for good cause."[8]

14   As good cause for the delinquencies, Defendants assert a number of circumstances

15   concerning the discovery requests in this case.

16            Defendants argue that the Court should simply overlook the delinquencies because

17   Plaintiff has served 22 separate discovery requests.  Defendants have not shown that Plaintiff

18   has exceeded the discovery limits.  (Indeed, any such objection would be delinquent and

19   waived.)  This is admittedly an expansive lawsuit, as compared to other prisoner civil rights

20   suits,  in terms of counts, defendants and discovery requests.  But certainly not beyond the

21   capabilities of experienced litigators like defense counsel. Moreover, Defendants had

22   available to them timely motions to extend if additional time was needed in light of the

23   number of requests.  Indeed, the Court has granted Defendants at least fourteen separate

24   _____

25           [8] Defendants argue that the Court should apply the "excusable neglect" standard of
     Rule 6(b)(1)(B) citing *Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*, 232 F.R.D.
26   609, 610-611 (D. Alaska 2005) (applying "excusable neglect" to avoid waivers on
     interrogatories and requests for production).    However, that decision proffered no
27   explanation for application of the more stringent standard, rather than good cause, as
     specified in Rule 33(b)(4), and thus this Court does not find it persuasive on the point.
28

extensions in this case. (*See* Motions, Doc. 12, 26, 33, 41, 101, 105, 106, 116, 147, 153, 154, 163, 176, and 177; and Orders, Doc. 18, 35, 44, 104, 108, 121, 150,156, 164, and 182.) While the Court might be tempted to overlook an inadvertent delinquency in light of the number of requests, Defendants have not demonstrated inadvertence, but rather a persistent disregard of the deadlines for discovery responses.

Defendants reference the date the discovery requests were actually received, and comment that counsel would not personally receive them until up to a day later. The Rules plainly and consistently provide that it is the service date, not the receipt date, which controls. *See* Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3).

Defendants are automatically entitled to an additional three days after service by mail. Fed. R. Civ. P. 6(d). Thus, absent some extraordinary delay in receipt, Defendants are not entitled to count time from the receipt date, but from the service date. The largest discrepancy reported by Defendants relates to requests served on Defendant Kauffman on March 4, 2010, and not received until March 9, 2010, a lag of five days, including an intervening weekend. (Response, Doc. 183 at 6.) That short of a delay offers no excuse for failing to serve a timely response.

Defendants also argue that the dates provided by Plaintiff should not be relied upon because there is an "uncertain lag between the time a request is handed to a prison official and when it is mailed." (Response, Doc. 183 at 11, n. 5.)   The Ninth Circuit long ago addressed this concern in the favor of utilizing the date the prisoner delivered the documents to prison officials. "[A]n incarcerated *pro se* litigant completes 'service' under Fed.R.Civ.P. 5(b) upon submission to prison authorities for forwarding to the party to be served." *Faile v. Upjohn Co.*, 988 F.2d 985, 988 (9th Cir. 1993) *disapproved of on other grounds by McDowell v. Calderon*, 197 F.3d 1253 (9th Cir. 1999).

Finally, Defendants argue that an intervening amendment of Plaintiff's complaint rendered any pre-existing discovery requests moot, citing an order in *Frost v. Schriro*, CIV-08-1599-PHX-PGR(MHB). In that case, however, the discovery was not "applicable to his First Amended Complaint" but instead "specifically related to the original complaint." Here,

however, Plaintiff's First Amended Complaint did not substitute unrelated claims for his original claims, but added additional claims (including some previously dismissed on screening).  (*See* Order 6/22/09, Doc. 67.)  Defendants point to no authority for the proposition that the filing of an amended pleading automatically vacates outstanding discovery requests. If Defendants were truly confused whether the pre-amendment discovery requests were terminated by the amendment, they could have timely sought clarification from Plaintiff and/or the Court.

In sum, Defendants offer, at best, carelessness, and at worst impudence, in failing to timely respond.  They offer nothing not wholly within their control as justification for their delay.

The Court does not find good cause to excuse the delinquent responses to interrogatories.

**Delinquent Responses to Requests for Admissions** - Defendants were delinquent in serving responses to Requests for Admission to Defendants Ramos, Bartos, Palossari, and Kauffman.  The Ninth Circuit has long recognized the authority of the District Court to permit late responses to requests for admissions.  *See French v. U.S.*, 416 F.2d 1149 (9th Cir. 1968).  Rule 36(b) expressly authorizes the court to "permit withdrawal or amendment" of an admission (prior to entry of a final pretrial order)"if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."

The Ninth Circuit has adopted a two part standard for applying this rule.  "The rule permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) 'the presentation of the merits of the action will be subserved,' and (2) the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits."  *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citations omitted).

"The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case."  *Hadley v. United*

1  *States*, 45 F.3d 1345, 1348 (9th Cir. 1995).  For example, in *Conlon*, the plaintiff had failed

2  to respond to requests for admissions and thereby admitted his damages were not caused by

3  wrongfuly acts of the defendant.  Thus, "the deemed admissions eliminated any need for a

4  presentation on the merits" and therefore satisfied the first prong of the Rule 36(b) test.

5  *Conlon*, 474 F.3d at 622.

6  Under the second half of the Rule 36(b) test, "[t]he party relying on the deemed

7  admission has the burden of proving prejudice." *Conlon*, 474 F.3d at 622. "The prejudice

8  contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will

9  now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may

10  face in proving its case, e.g., caused by the unavailability of key witnesses, because of the

11  sudden need to obtain evidence' with respect to the questions previously deemed admitted.

12  *Hadley*, 45 F.3d at 1348 (citations omitted).

13  Defendants do not assert that "the admissions would practically eliminate any

14  presentation of the merits of the case." *Hadley*, 45 F.3d at 1348.

15  Rather, Defendants complain that the requests for admissions to Palossari are

16  "irrelevant to any of his claims."  (Response, Doc. 183 at 17.)  Assuming Defendants are

17  correct, then the admissions would not affect the presentation of the merits of the case.

18  With respect to the requests to Defendant Kaufman, Defendants asserted that although

19  he objected to each of these admission requests, he also denied or admitted each of them.

20  (Response, Doc. 183 at 18.)  Although Plaintiff continues to complain of their untimeliness,

21  Plaintiff acknowledges he has been served with revised responses from Kaufman which

22  either "admitted or clarified their prior denials."  (Reply, Doc. 186 at 7.)  The fact that

23  Defendant Kaufman may have responded does not preserve his objections.  Rather,  "the

24  responding party waives any objections to the request for admission by answering the

25  request." 10A Fed. Proc., L. Ed. § 26:736 at n. 10.  Because the responses were untimely, the

26  requested admissions are deemed admitted.

27  Because Defendants fail to convince the Court that their deemed admissions preclude

28  any presentation of the merits of the case, the Court need not reach Plaintiff's burden to

1   prove prejudice.  The Court concludes that Defendants have waived their objections to the

2   delinquent requests for admissions.

3   **Delinquent Responses to Requests for Production** - The Court has concluded that

4   the Requests for Production to Defendants generally and to Defendants Bartos, Palossari,

5   Markley and Kaufmann were or are delinquent

6   As noted above, Rule 34 does not provide a procedure or standard for addressing

7   delinquent responses to requests for production..  With such requests, the burden is on the

8   requesting part to pursue a motion to compel under Rul 37(a)(3)(B)(iv) and/or a motion for

9   sanctions Rule 37(d)(1)(A), which Plaintiff has now done.  However, objections to the

10   requests do not justify a failure to respond, unless the responding party has filed a motion for

11   protective order.  Fed. R. Civ. P. 37(d)(2).

12   Defendants argue that the Court should apply the "excusable neglect" standard of Rule

13   6(b)(1)(B) citing *Certain Underwriters at Lloyds v. Inlet Fisheries, Inc.*, 232 F.R.D. 609,

14   610-611 (D. Alaska 2005) (applying "excusable neglect" to avoid waivers on interrogatories

15   and requests for production). Alternatively, Rule 6(b)(2), Federal Rules of Civil Procedure,

16   generally governs motions to extend made after the expiration of the allowed time.  In such

17   instances, the court may permit a delinquent filing or action upon a showing that the failure

18   to act was the result of "excusable neglect."  The Court will adopt Defendants' approach and

19   apply an excusable neglect standard to determine whether Defendants should be permitted

20   to belatedly assert objections to the request for production.

21   In *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,* the Court

22   worked to define the concept of "excusable neglect" in the context of a delinquent

23   bankruptcy claim, but noted the common usage of this term throughout federal procedural

24   rules in relation to deadlines. 507 U.S. 380, 393 (1993).  The Court noted that "neglect"

25   necessarily encompasses situations involving inadvertence, and "encompasses both simple,

26   faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at

27   388.  Thus, the Court found that the ameliorative part of the standard lays in the word

28   "excusable." *Id.*

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include, as the Court of Appeals found, the danger of prejudice to the [other party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* at 395.   The district court has discretion in determining the weight to be given to the various factors considered in making this equitable determination. *Mendez v. Knowles,* 556 F.3d 757, 765 (9th Cir. 2009).

<u>Prejudice</u> - Here, Defendants argue there is no prejudice to Plaintiff because all that is pending is their motion for summary judgment and they will stipulate to extensions. However, Defendants ignore the substantial effort required by Plaintiff to obtain responses, the intervening expiration of discovery deadlines, and the general delay in the litigation.

Defendants argue that the discovery directed to the different defendants was often seeking the same information, which had often already been provided.  That ignores, however, the risk that Plaintiff ran that a particular defendant would possess access to documents, or would have had personal involvement different from another defendant. While the parties share defense counsel, Plaintiff cannot presume that all discovery responses reflect communal knowledge or information.

The discovery request cutoff was set for September 21, 2009.  (Order 6/22/09, Doc. 67.)  After Plaintiff's amendment of his pleading, Plaintiff was given until March 19, 2010 to serve discovery requests on Defendants Marten, Kohl, Cardenas, and Kaufman.  (Order 2/9/10, Doc. 121.)  After discovery of the failure of the Court and U.S. Marshals Service to effect discovery on Defendant Haley, Plaintiff was given 28 days after Defendant Haley's appearance to serve discovery requests on Defendant Haley.  (Order 5/6/10, Doc. 146.) Thus, in the interim between the due date on Plaintiff's requests and the service of responses, Plaintiff's deadline for discovery requests expired as to most Defendants.

While Defendants proffer extensions to Plaintiff, the Court is not prepared to reset the discovery and dispositive motion deadlines in this case to accommodated Defendants' failure

to make timely discovery responses.

Delay - Defendants note that the delay was often a matter of days.  Indeed, with the general Request for Production, and Defendant Kauffman's discovery responses, the delays were 4 to 5 days.  However, the responses to requests for production to Defendant Bartos were 355 days delinquent.  No responses have been served to the requests to Defendants Palossari and Markley.

The Court is particularly troubled that this is not a case where Defendants have been surprised by this motion to compel.  As far back as October, 2009, Plaintiff had alerted Defendants of their delinquencies and failures to respond by filing his original Motion to Compel (Doc. 94 & 95).[9]  Despite that notice, Defendants continued to be delinquent in their responses, and to fail to respond to such requests as the Palossari and Markley requests.

Reason for the delay - As discussed above in regard to the "good cause" for the delinquent responses to interrogatories, Defendants have failed to proffer any acceptable excuse for their delays.

Good Faith - Defendants contend that they have been acting in good faith, responding to Plaintiff's discovery requests.  Plaintiff counters that their "responses" have consisted of little more than a string of objections and few pages of documents.

With regard to the short delays of 4 or 5 days, the Court is inclined to find good faith.  Delays that have run into weeks or months, or have simply been a complete failure to respond, even after being advised by the Court in a discovery conference that they were delinquent and the Court was evaluating Plaintiff's waiver clams  (M.E. 4/23/10, Doc. 144), shows at least an absence of good faith.

Weighting - The delay has ranged from the inconsequential to the incredible.  The impact on the proceeding, however,  has been substantial, leaving Plaintiff and the Court to deal with a protracted discovery dispute, and delays in dispositive motion proceedings. This weighs against Defendants, from minimally to substantially.  The prejudice to Plaintiff

---

[9]  That motion was denied without prejudice because of Plaintiff's failure to pursue informal resolution with Defendants and the Court.  (*See* Order 10/20/2009, Doc. 97.)

beyond the simple delay will likely not be known until the proceeding is concluded. This is an equilibrious factor. The reasons for the delays range from negligence to callousness and weigh in such a range against Defendants. The faith of defendants ranges from presumably good to a complete disregard of their duties in the litigation.

In sum, where the delays have been five days or less, the Court finds excusable neglect, and consequently good cause. As to all other delays, the Court finds an absence of excusable neglect.

For the foregoing reasons, the Court concludes that Defendants have not shown excusable neglect to permit them to belatedly serve objections to the requests for production on Defendants Bartos, Palossari and Markley.

**Limits on Discovery** - Defendants attempt an end run around their failure to make timely objections by arguing that even if they have waived objections, the Court should limit the discovery because Plaintiff's requests "far exceed the permissible bounds of discovery." (Response, Doc, 183 at 13.) Without identifying specific requests, Defendants argue that the objections to Plaintiff's requests "involve prison security, relevancy, and wildly overbroad and burdensome requests."

> Under Fed.R.Civ.Pro. 26(b)(2)(C) the court, on its own initiative after reasonable notice or pursuant to a motion under Rule 26(c), may limit the discovery sought if it determines that it is unreasonably cumulative or duplicative or the burden and expenses of the discovery outweighs its likely benefit taking into account the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the litigation and the importance of the proposed discovery in resolving the issues. Even where the court deems the party's discovery objections to have been waived, it has the discretion to decline to compel production where the request far exceeds the bounds of fair discovery.

*Fifty-Six Hope Rd. Music, Ltd. v. Mayah Collections, Inc.*, 2007 WL 1726558 (D. Nev. June 11, 2007). The Court will exercise that discretion as to some of Plaintiff's requests, as discussed hereinafter.

In doing so, the Court looks only to the objections urged in the Memorandum in Defendants' Response (Doc. 183). The Court notes that Defendants include in their Response, as Exhibit L, a table of all of the objections they posed to Plaintiff's requests.

Defendants do not reurge those objections, and reference the Exhibit only once as evidence that "the objections interposed primarily involve prison security, relevancy, and wildly over broad and burdensome requests." (Response, Doc. 183 at 13-14.) Defendants now argue only limited objections. (*See id.* at 14-19.) The Court will address only those objections specifically argued in Defendants' Memorandum..

### 3.  SPECIFIC DISPUTED REQUESTS

At present, Plaintiff continues to seek an order compelling responses to the following specific discovery requests, relying upon both his waiver argument and on the invalidity of objections asserted or deficiencies in responses provided. (*See* Motion, Doc. 161 at 7, and Exhibit 1.)

**Requests for Admissions** - Plaintiff requests that any delinquent request for admission be deemed admitted. As discussed above, the Court has determined that responses to Requests for Admission to Defendants Ramos, Bartos, Palossari, and Kaufman were delinquent, and relief from the provisions of Rule 36(a)(3) is not justified.

Defendants proffer no compelling justification for the Court to *sua sponte* to limit Plaintiff's requests for admissions under Rule 26(b)(2)(C). They argue that the disputed Requests for Admissions to Palossari are irrelevant. (Response, Doc. 183 at 17.) Assuming so, then there is no harm to Defendant from the admissions. Defendants argue that Defendant Kaufman answered his Requests for Admissions, and the Court cannot compel a different answer. (*Id.* at 18.) As discussed above, Defendant's answers were delinquent, and those delinquent answers do not serve to evade the effect of the deemed admissions.

Accordingly, the requests for admission to Defendants Ramos, Bartos, Palossari, and Kaufman are deemed admitted.

**Interrogatories** - Plaintiff requests that all delinquent objections to his interrogatories be deemed waived. Responses to Interrogatories to Defendants Bartos, Palossari, Markley, and Kaufman were delinquent, and the Court finds no basis to relieve Defendants of their waiver of objections. Plaintiff lists specific complaints only about interrogatories to

Defendants Ramos, Bartos, and Kauffman.  Given the fact that the responses by Defendant Markley were served with Defendants' Response to the motion to compel, and no responses by Defendant Palossari have been served, the omission of specific concerns about these responses is understandable.   Of all the interrogatories, Defendants address specific objections only as to Defendant Bartos and Ramos. Accordingly, Defendants will be ordered to answer any interrogatories to **Defendants Palossari, and Markely** to which objections were asserted.  And, Defendant Kaufman will be ordered to respond to Interrogatory number 4, the only interrogatory addressed by Plaintiff.  (*See* Motion, Doc. 161, Exhibit 1 at 25.)

Defendants argue the Court should  *sua sponte* limit the interrogatories with untimely responses under Rule 26(b)(2)(C), despite any waiver.

Having *sua sponte* reviewed the interrogatories to Defendant Markely, the Court will make a single exception concerning Interrogatory 1 to Defendant Markley, which seeks a legal service address for all Defendants.  The Court finds that the security risks entailed in providing what may be residential addresses for ADOC employees, in the absence of any specific justification from Plaintiff, takes this request beyond the bounds of "fair discovery." *Fifty-Six Hope Rd. Music, Ltd.*, 2007 WL 1726558.  Defendants will, however, be required to provide current work addresses for service on such Defendants, and where only residential addresses are available to so designate, to permit Plaintiff to seek an order for the provision of such addresses under seal at such time as Plaintiff can demonstrate need.

Defendants failure to provide responses on the interrogatories to Defendant Palossari preclude the Court from making a similar review as to Defendant Palossari.

The only delinquent interrogatory responses addressed by Defendants are those to **Defendant Bartos**, including interrogatories 6, 7, 10, 11 and 13 .  (Response, Doc. 183 at 17.)

In  Interrogatory 6, Plaintiff seeks information on any recent lawsuit in which any named Defendant was involved related to ADOC. (Motion, Doc. 161, Exhibit 1 at 13.) Defendants contend that this is "not in [Defendant Bartos'] knowledge and is overly broad – why should he have or [sic] produce information about lawsuits against other Defendants."

- 16 -

1  (Response, Doc. 183 at 17.)  Plaintiff replies that this requests fits within the parties'

2  agreement to permit responses on behalf of all defendants by service on their common

3  defense counsel. (Reply, Doc. 186 at 6.)

4        The Court finds the latter argument unpersuasive.  The request is addressed solely to

5  Defendant Bartos.   The agreement described by Plaintiff related solely to requests

6  specifically served on the  Defendants in general.

7        However, Defendant Bartos is identified by Plaintiff as the Northern Regional

8  Operations Director for ADOC.  (First Amended Complaint, Doc. 74 at 3.)  As such, there

9  is no reason to presume that Defendant Bartos does not have available to him the requested

10  information.  Defendants do not argue he does not.

11        Nor is the fact that Defendant may not have the information "in his head" sufficient.

12  "The answering party cannot limit his answers to matters within his own knowledge and

13  ignore information immediately available to him or under his control." *Essex Builders Group,*

14  *Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005). "As a general rule a party

15  in answering interrogatories must furnish information that is available to it and that can be

16  given without undue labor and expense."  8B Fed. Prac. & Proc. Civ. § 2174 (3d ed.).

17        Defendants do not explain why the request is overly broad.  Requests for such

18  information are common in civil lawsuits, and the Court discerns no reason to restrict the

19  request.

20        Defendant Bartos will be ordered to answer Interrogatory 6.

21        In Interrogatory 7, Plaintiff seeks information about pending lawsuits against ADOC

22  or its officers concerning the protective segregation program or claims of inadequate medical

23  care. (Motion, Doc. 161, Exhibit 1 at 14.)  Defendants contend this request is "overly broad

24  an irrelevant – they have no relevance to Plaintiff's particular issues."  To the contrary, the

25  requests seem directed to the nature of Plaintiff's Complaint.  On the presumption that some

26  investigation will be required by Defendant to respond, and the Court might require more

27  from Plaintiff to counter a timely objection, Defendant's have failed to show that "the request

28  far exceeds the bounds of fair discovery."  *Fifty-Six Hope Rd. Music, Ltd.,* 2007 WL

1   1726558.

2     Defendant Bartos will be ordered to answer Interrogatory 7.

3     In <u>Interrogatory 10</u>, Plaintiff seeks contact information for parole or community

4   supervision officers assigned to 3 specific inmates and are most easily located through the

5   referenced officers.  (Motion, Doc. 161, Exhibit 1 at 14-15.)  In <u>Interrogatory 11</u>, Plaintiff

6   seeks the "full name and A.D.O.C. number" of a list of ten inmates, some of whom are

7   identified only by their first names and/or cell number. (Motion, Doc. 161, Exhibit 1 at 15.)

8   Plaintiff argues that the referenced inmates are either witnesses to or issuers of threats against

9   Plaintiff.

10     Defendants argue these requests seeks confidential inmate records and is irrelevant

11   because Plaintiff cannot re-argue the protective segregation decision.  (Response, Doc, 183

12   at 17.)  Defendants do not explain why the identity of a parole officer or an inmate and his

13   ADOC number is confidential, nor do they suggest that they are privileged.

14     Defendants proffer no authority for the proposition that Plaintiff cannot attack the

15   protective segregation decision.  Moreover, even if the decision itself cannot be reviewed,

16   that does not render potential witnesses as to the existence of real threats irrelevant to

17   Plaintiff's Eighth Amendment claims concerning his protective segregation status.

18     Defendant Bartos will be ordered to answer Interrogatories 10 and 11.

19     In <u>Interrogatory 13</u>, Plaintiff seeks the "name of the 'Key Contact Nurse' at Lewis

20   Complex in February through May, 2008.". (Motion, Doc. 161, Exhibit 1 at 16.) Defendants

21   argue they "have not been able to identify a 'key contact nurse' and such nurse is also not

22   relevant to any claim."  (Response, Doc. 183 at 17.)  Plaintiff argues in reply that the "key

23   contact nurse" is identified by ADOC policy as the nurse responsible for scheduling medical

24   appointments on health needs requests, and that the information is relevant to assertion that

25   he was not being provided appropriate medical care in retaliation for his complaints.  That

26   claim underlies his Counts 7 (medical needs) and 10 (retaliation).

27     With the clarification that Plaintiff is referring to the persons responsible for

28   scheduling medical appointments, Defendant Bartos will be ordered to answer Interrogatory

13.

In summary, Defendant Bartos will be ordered to answer Interrogatories 6, 7, 10, 11 and 13.

As to the interrogatories to **Defendant Ramos**, Plaintiff contends the answers to Interrogatories 1, 2, 3, 4, 7, 12, and 15 are deficient.  Defendants timely objected to each of these interrogatories.  Defendant now contends that the objections to Interrogatories 7, 12 and 15 should be sustained.  (Response, Doc. 183 at 16-17.)

No argument is made by Defendants in their responses as to Interrogatories 1, 2, 3, or 4.  (*Id.*) Accordingly, Defendant will be required to answer these interrogatories.

Plaintiff's Interrogatory number 7 to Defendant Ramos asked Defendant to "state the name and ADOC number of the cellmate of Inmate Brent Lee Hart on 4/8/08."  (Motion, Doc. 161, Exhibit 1 at 9.)  Defendants contend that "Defendant is not able to ascertain who was this inmate's cellmate on a particular date" and that the request is irrelevant. (Response, Doc. 183 at 16.)

With regard to the information's availability, Plaintiff contends in his motion that such information is contained within daily "count sheets." (Motion, Doc. 161, Exhibit 1 at 10.) Plaintiff contends in his Reply that this information can be "provided with little effort." (Reply, Doc. 186 at 6.) Defendant does not establish any effort to locate the information, e.g. by reviewing the daily count sheets, nor does Defendant suggest that such information is not available to him.  Rather, Defendant offers only the bald assertion that he can't ascertain the information.  The Court is not convinced.

With regard to the information's relevancy, Defendants contend that this information only relates to "threats to open the doors and let inmates attack him" which they contend "do not appear to be part of the Complaint." (Response, Doc. 183 at 16.)   However, in his Motion, Plaintiff contends *inter alia* that this unknown inmate was a witness to actions by corrections officers which triggered Plaintiff's protective segregation request, and that Plaintiff believes this inmate suffered through attacks and threats similar to those with which officers threatened Plaintiff. (Motion, Doc. 161, Exhibit 1 at 10.) He describes those as

"allowing general population inmates to access his cell so they might assault or kill him." (*Id.*)  Given Plaintiff's Eighth Amendment claim based upon the denial of his protective segregation requests and the based upon the officers' intentional subjection of Plaintiff to risk of assaults from other inmates, the Court finds that the information sought is "regarding . . . the identity and location of persons who now of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).

Defendant Ramos will be ordered to respond to Interrogatory Number 7.

Plaintiff's <u>Interrogatory number 12</u> to Defendant Ramos asked Defendant to "[i]dentify all documents created pursuant to any 'break-in' or attempted 'break-in' by general population inmates into the temporary detention unit cells within Buckley Unit, Building One, 'D'-Pod that occurred in 2008." (Motion, Doc. 161, Ex. 1 at 11.)  Defendants argue that these documents "are not part of Plaintiff's claims and thus irrelevant." (Response Doc. 183 at 16.)  Plaintiff's Motion offers no explanation of the request's relevancy, but simply asserts that it "is relevant." (Motion, Doc. 161, Ex. 1 at 11.)  Plaintiff does not address the request in his Reply. (Doc. 186 at 6.)  Even after reviewing the generally argued "theories of Plaintiff's case" (Motion, Doc. 161 at 6), the Court finds no basis to connect this request to Plaintiff's claims.  The objection will be sustained.

Plaintiff's <u>Interrogatory number 15</u> to Defendant Ramos asked Defendant to provide "the historical Security Threat Group (STG) status, and the corresponding dates in any changes to same" for a list of inmates. (Motion, Doc. 161, Ex. 1 at 12.)  Plaintiff argues in his Motion that these individuals are potential witnesses. (*Id.* at Exhibit 1 at 13.)  Defendants argue that this information is confidential, poses a security risk, is irrelevant, and can be obtained from the witnesses at trial. (Response, Doc, 171 at 16-17.)  In his Reply, Plaintiff contends that "Defendants were on notice as to threats to Plaintiff from these men" because he asserted threats from them in his protective segregation request, and that "the information requested will prove that Defendants knew of the gang status and power that these men held." (Reply, Doc. 186 at 6.)

The Court finds the information requested relevant to Plaintiff's claims, and within

1    the scope of discovery.

2         Defendants proffer no authority for the assertion that the information is confidential,

3    and do not suggest that any recognized privilege applies.

4         However, the Court is concerned about the security risks posed by the distribution of

5    the requested information, particularly in light of the specificity of the information requested,

6    and that as a result the discovery may be unduly burdensome.  Fed. R. Civ. P. 26(b)(2)(C).

7    The Court is authorized to "prescribe] a discovery method other than the one selected by the

8    party seeking discovery" and to specify the terms for discovery.  Fed. R. Civ. P. 26(c)(1). To

9    avoid the security concerns and avoid the delay of additional discovery requests, Defendants

10   will be directed to either admit that the named individuals were known to the Arizona

11   Department of Corrections to be powerful members of prison gangs, or to show cause for

12   their failure to do so, and to propose alternative means to provide Plaintiff the information

13   he seeks while minimizing the security risks.

14        In summary , Defendant Ramos will be ordered to respond to Interrogatories 1, 2, 3,

15   4, 7 and to comply with the alternate discovery as to Interrogatory 15.

16        **Requests for Production of Documents** - Plaintiff complains of inadequate

17   responses to requests for production served on Defendants generally, and Defendants

18   Kauffman, Palossari and Markley.

19        As to the requests for production served on **Defendants** generally, Plaintiff complains

20   of the responses to requests 4, 6, 8, 9,11, 12, 13, 14 and 15, to which Defendants objected.

21    (Motion, Doc. 161, Exhibit 1 at 1-6.)

22        Defendants contend that the requests for production served on "Defendants" are

23   improper, inasmuch as the rules only permit service on "a named individual party."

24   (Response, Doc. 183 at 14 (citing Fed. R. Civ. P. 34(a)).)  Moreover, Plaintiff contends that

25   Defendants expressly agreed to respond to these requests at the parties' April 16, 2009

26   conference (20 days before responses were due) because "all defendants were represented

27   by the Attorney General."  (Motion, Doc. 161 at 4.  *See also* Reply, Doc. 186 at 5.)

28   Defendants do not dispute that contention.

Assuming that Plaintiff's direction of the requests to all defendants, all of whom are represented by the same counsel, were improper, Defendants waived any such objection both expressly and by failing to timely object.  To hold otherwise would encourage parties to simply ignore such objections of form, and lie in wait until the matter is pressed in a motion to compel before they finally spring their objection on the proponent

With regard to <u>Request 4</u>, Defendants contend that they refused to produce performance appraisals and disciplinary files of the defendants and two non-defendants, arguing they are confidential under Arizona law and irrelevant.  (Response, Doc. 183 at 14.) Defendants cite absolutely no authority for their contentions.

In their objections served on Plaintiff, Defendants referenced Ariz. Rev. Stat. § 31-221(D)-(E) for the proposition that they are without authority to produce the records, and that Ariz.Admin.Code § R2-5-105(E) and ADOC D.O. 507.01 make personnel files confidential. (Motion, Doc. 151, Exhibit 1 at 1.)  However, Ariz. Rev. Stat. § 31-221 has no relationship to personnel files, but relates instead to prisoner records.   The referenced portion of the Arizona Administrative Code authorizes access to "[t]he employee or an individual who has written authorization from the employee to review the personnel file." Ariz. Admin. Code § R2-5-105(E)(1).  Thus, as to the named Defendants, these documents remain in the parties' control.  Moreover, the regulations permit release to an "an official acting in response to a court order or subpoena."  *Id.* at -105(E)(4).  The term "official" is limited to an individual "exercising powers and duties on behalf of the chief administrative head of a public body." Thus, a subpoena directed to an appropriate officer would be sufficient to overcome this regulation.  However, no such subpoena has issued.

Further, even assuming some state law, regulation or policy prohibited the voluntary release of the requested information, that does not amount to a privilege avoiding compliance with the discovery processes of a Federal court.  It is true that Fed.R.Civ.P. 26(b)(1) specifically provides that privileged items are excluded from the scope of discoverable matters.  However, Fed.R.Evid. 501 requires that as to federal claims, federal laws of privilege apply.  Defendants cite to no federal privileges.

Thus, the only valid contention raised in the objections appears to be that, as to the non-Defendants, the records are, under state law, outside the control of the Defendants. As such, an order directing them to produce these records would appear futile.

Defendants also argue that the information would not be admissible to show "incidents of the same type." (Response, Doc. 183 at 14.) Plaintiff argued in his Motion to Compel that this information is sought to identify other potential defendants "who were on notice as to previous misconduct." He also argues that it would be admissible under Federal Rule of Evidence 404(b) (evidence of other wrongs admissible to show motive, intent, etc.) and 406 (habit, routine practice). (Motion, Doc. 161, Exhibit 1 at 1.) Defendants do not respond to these arguments.

Defendants complain that Plaintiff seeks not just limited portions of the files, but "all files." (Response, Doc. 183 at 15.) Plaintiff's request is limited to "performance appraisals and disciplinary files," although he then expands it to include a host of sources, including incident reports, investigations, etc. (Motion, Doc. 161, Exhibit 1 at 1.) The latter would conceivably require a foray into a vast sea of documents. It is reasonable to assume that any matters found to be of concern or merit  would become part of some record specific to the employee. The Court finds that beyond such repository, "the request far exceeds the bounds of fair discovery." *Fifty-Six Hope Rd. Music, Ltd.,* 2007 WL 1726558.

Finally, Defendants complain that allowing Plaintiff access to any piece of a personnel file "raises grave security risks." (Response, Doc. 183 at 15.) The Court is not insensitive to these risks, and they are a legitimate reason to find discovery requests unduly burdensome. However, in response to a motion to compel, defending delinquent objections, Defendants cannot simply throw security up as some impenetrable wall.  Defendants make no effort to elucidate the concern, proffer means to permit Plaintiff access to relevant information while redacting of particularly sensitive information, etc. Nonetheless, the Court will permit Defendants to provide redacted copies, with unredacted copies filed under seal. Redactions should be limited to identifying information beyond the Defendants' name and badge number, and to redact identifying information of other officers and inmates, with the

provision of substitute, anonymous identifiers sufficient to make the substance of the information meaningful.

Accordingly, Defendants will be ordered to produce, from whatever personnel or similar file specifically related to the designated officer, where such records are normally maintained, the performance appraisals and disciplinary records in Request 4 as to the named Defendants only, in redacted form, with unredacted copies filed under seal.

With regard to Request 6, Plaintiff seeks the signed oaths of Defendants, Sgt. Fajardo and Deputy Warden Timmons, related to ethics, and upholding the law. (Motion, Doc. 161, Exhibit 1 at 2.) Defendants argue the oaths are irrelevant, Plaintiff knows the language, and that Defendants have to uphold the laws. Defendants fail to convince the Court that "the request far exceeds the bounds of fair discovery." *Fifty-Six Hope Rd. Music, Ltd.,* 2007 WL 1726558. Plaintiff should be permitted to impeach witnesses with such oaths, should the opportunity arise, and Defendants suggest no particular burdensomeness.

Defendants will be ordered to produce the records in Request 6.

With regard to Request 8, Plaintiff seeks "[a]ll reports, etc. generated by information obtained from confidential informants at Lewis Complex from 1/31/08 to 5/31/08." (Motion, Doc. 161, Exhibit 1 at 2.) Plaintiff argues that this information will show that he had served as a confidential informant, officers broadcast that information, resulting in threats against him, and he notes that the officers to whom he provided information have denied meeting with him. (*Id.* at 2-3.)

Defendants argue that Plaintiff's "entire redacted protective segregation file was produced," and that any confidential information reports would be in such file. Defendants also express concern about the security risks of divulging information on such a broad array of confidential informants, particularly in light of Plaintiff's dangerousness. (Response, Doc. 183 at 15.) Defendants argue that the reasons for wanting PS status are irrelevant, and it is only the "the prison's response that is relevant." Plaintiff counters that the entire file was not provided, and that it was heavily redacted. (Reply, Doc. 186 at 6.)

The Court does not find persuasive the argument that the reasons for the request is

1   irrelevant.   Evaluating whether a response evidenced deliberate indifference requires
2   information about the basis for the request.

3          However, this request seeks production of a broad range of documents, potentially
4   from a vast sea of sources, all clouded by the security risks inherent in the disclosure of
5   information about confidential informants, a risk which is even the substance of a number
6   of counts in Plaintiff's Complaint.  On the other hand, the Court is cognizant of the difficulty
7   Plaintiff faces in attempting to craft a narrower request - - the entire process of using
8   confidential informants is presumably kept confidential, leaving Plaintiff to guess where the
9   information he seeks may be found. However, the Court is concerned that Plaintiff proffers
10  no reason to believe the information he seeks even exists.  Nor does he suggest that
11  Defendants are incorrect in their assertion that any reports related to Plaintiff would be in his
12  protective segregation file.

13         Still, the Court is concerned that the redactions adopted by Defendants may have
14  excluded the relevant information.  Therefore, the Court will direct Defendants to file with
15  the Court, under seal, both the redacted and the complete and unredacted copies of Plaintiff's
16  Protective Segregation file.  The Court will review these and make a further order as to
17  whether additional production will be required.

18         With regard to Request 9, Plaintiff seeks "[s]upporting document for all yard closures
19  and/or building searches that took place at Buckley Unit between 1/31/08 and 3/18/08."
20  (Motion, Doc. 161, Exhibit 1 at 3.)  Plaintiff seeks not only the document justifying the
21  searches, but the results as well. (*Id.*)  He argues that the documents "will show the official
22  actions taken by ADOC in response to information provided by Plaintiff."  (*Id.* at 4.)

23         Defendants argue that, despite their waived objections, the Court should not require
24  a response because documents "about yard closures are not relevant to any claims and would
25  be difficult to collect and produce."  (Response, Doc. 181 at 16.)   Defendants do not
26  specifically address the searches issue.  Plaintiff makes no pertinent reply.

27         It appears that this request is intended to corroborate Plaintiff's claim that he was
28  serving as a confidential informant, and that they acted on his information, thus lending

1    credibility to his claims of resulting threats.  Thus, the information appears relevant.

2         As to the burdensomeness of the request, Defendants fail to provide any details to

3    suggest that compliance would be so difficult to as to make this request one which "far

4    exceeds the bounds of fair discovery." *Fifty-Six Hope Rd. Music, Ltd.,* 2007 WL 1726558.

5    For example, Defendants do not suggest that the closures or searches were numerous or that

6    the documents are far flung.

7         The Court can anticipate, however, that legitimate security concerns could arise from

8    the production of these documents, *e.g.* if an inmate other than Plaintiff were the instigator,

9    specific tactical plans or procedures were revealed, etc.  Therefore, Defendants will be

10   ordered to produce the documents sought in Request 9, but may redact the records as

11   necessary to avoid the disclosure of the identity of specific inmates or officers other than

12   Plaintiff, or otherwise creating a specific threat to institutional security..

13        In his  Request 11, Plaintiff seeks "[a]ll sergeants' reports, lieutenants reports and

14   captains' reports generated at Buckley Unit (Lewis Complex) between 1/31/08 and 3/18/08."

15   (Motion, Doc. 161, Exhibit 1 at 4.)   In Request 13, Plaintiff seeks "[a]ny posting log, duty

16   log. etc. showing the position or assignment for all officers at Buckley Unit between 1/31/09

17   and 3/18/08." (*Id.* at 5.)  Plaintiff offers to limit this request to Building One, and argues he

18   "must be able to identify the ADOC officers."  (*Id.*)  In his Request 14, Plaintiff seeks "[a]ll

19   journals 'bubble' logs, etc. generated in Building One (C and D pods) describing the daily

20   activities taking place in that location between 1/31/08 and 3/18/08."  (*Id.* at 6.)  Plaintiff

21   argues that the "broadcasting" of his informant status occurred during certain activities, (e.g.

22   during showers), these documents will identify the responsible officers. (*Id.*)  In his Request

23   15, Plaintiff seeks the "Tower log for Buckley Unit between 1/31/09 and 3/18/08."  (*Id.*)

24   Plaintiff argues that these records will show a riot on February 18, 2008, which Plaintiff

25   contends resulted from "the white inmates not 'taking care' of plaintiff 'when they had the

26   chance.'" (*Id.*)

27        Defendants contend, without explanation, that these requests are  irrelevant, overly

28   broad and raise serious security concerns. (Response, Doc. 183 at 16.)

Without elucidation, the Court will not presume irrelevance or security concerns (particularly where Defendants have previously availed themselves of redactions to avoid such concerns).

The requests do, however, appear to be overly broad.  The request for officer reports is not limited to reports on specific issues, or by particular persons, but simply seeks a regurgitation of what would appear to be a raft of records.  Plaintiff proffers nothing to justify such a broad ranging request.  Similarly, the assignment logs request, even reduced to a single building, appears burdensome, especially with no real justification for the request proffered. Likewise, the daily journal requests seeks a bevy of information without connection to particular dates or incidents.  The Court is especially concerned where all of these requests concern events to which Plaintiff was a witness, and yet Plaintiff makes no effort to target his request.  Thus, the Court must conclude that these requests "far exceed[] the bounds of fair discovery." *Fifty-Six Hope Rd. Music, Ltd.,* 2007 WL 1726558.

Defendants will not be ordered to respond to Request 11 Request 13, or Request 14.

As to Request 15, the central contention, e.g. the existence of the riot, can be dealt with by an admission and alternatively an interrogatory.  Accordingly,  Defendants will be directed to either admit that a riot occurred between black inmates and white inmates on Buckley Unit on February 18, 2008, or shall serve a response to the following interrogatory: "Identify the date of any riots or similar disturbances occurring between black inmates and white inmates occurring on Buckley Unit between the dates of January 31, 2008 and March 18, 2008."

In his Request 12, Plaintiff seeks "[o]ne count sheet per day for each pod at Buckley Unit for the period 1/31/08 through 3/18/08."  Defendants argue that "[c]ount sheets have been produced," but offer no details on their production.  (Response, Doc. 183 at 16.) Plaintiff counters that "not a single count sheet has been provided."  (Reply, Doc. 186 at 6.)

Giving Defendants the benefit of the Court's doubts, no reason is proffered to not require service of a the count sheets again.

Defendants will be ordered to (again) produce the documents in Request 12.

Plaintiff complains about **<u>Defendant Kaufman's</u>** responses to his Requests for Production 1 through 13, excepting only number 10. (Motion, Doc. 161, Exhibit 1 at 18-22.) (Although delinquent, the Court has determined hereinabove to treat the objections to these requests as timely made.)

In <u>Request 1</u>, Plaintiff seeks"accountability logs" for certain dates at Buckley Unit bearing the name of "Alfredo Cardenas." (Motion, Doc. 161, Exhibit 1 at 18.) In <u>Request 2</u>, he seeks the same information as to "Sgt. Kaelea B. Cole (names as Kohl)." (*Id.* at 19.) In <u>Request 3</u>, he seeks ADOC documents showing the posting of Officer Cardenas.  In <u>Request 4</u>, he seeks the same documents for Officer Kohl.  (*Id.*)  Defendants respond that the "[a]ll documents requested in RFPD 1-4 that have been obtained have been produced, and will be continuously updated." (Response, Doc. 183 at 17.)  Plaintiff argues that only minimal documents have ben provided in response (four days of accountability logs as to Defendant Cardenas).  (Reply, Doc, 186 at 7.)

Defendants proffer no objections to these requests.  Their response suggests that the search is simply ongoing.  Defendants have had over six months to respond to these requests, and are simply producing things as they turn up.. While certainly a duty to supplement exists, a request for production is not wish list for what may eventually turn up.

Defendants will be ordered to produce the documents requested in Requests 1, 2, 3, and 4.

In <u>Request 5</u>, Plaintiff requests any oaths taken by Defendants to uphold the law. (Motion, Doc. 161, Exhibit 1 at 20.)  Defendants again argue the oaths are irrelevant, Plaintiff knows the language, and that Defendants have to uphold the laws. (Response, Doc. 183 at 17,15.)  This time, the Court does not address these arguments as waived objections, but as properly presented objections.  Nonetheless,  Defendants fail to convince the Court that the request is outside the bounds of discovery.  " Discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition." 8 Fed. Prac. & Proc. Civ. § 2015, at n.2.  This is true even if the material itself may not be admissible. *Id.* at text surrounding n. 8. Plaintiff should be permitted to impeach

1   witnesses with such oaths, should the opportunity arise, and Defendants suggest no particular

2   burdensomeness.  Defendants will be ordered to produce the documents requested in Request

3   5.

4          In Request 6, Plaintiff references a request for production on Defendant Ramos, and

5   requests the same information as to Defendants Cole, Cardenas and Kaufman. "  (Motion,

6   Doc. 161, Exhibit 1 at 20.)   Plaintiff subsequently attempted to clarify that he was

7   referencing his requests served on Defendants generally, which requested various

8   performance appraisals and disciplinary files. Defendants reassert the same objections made

9   to those requests.  (Response, Doc. 183 at 17,15.)

10         As with Request 4 to the Defendants generally, the Court finds the request overly

11  broad, in many respects outside the control of defendants, and will therefore order Defendant

12  Kaufman to produce, from whatever personnel or similar file specifically related to the

13  designated officer, where such records are normally maintained, the performance appraisals

14  and disciplinary records in Request 4 as to Defendant Kaufman only, in redacted form, with

15  unredacted copies filed under seal.

16         In Request 7, Plaintiff seeks "'issue papers' submitted to the Direct of ADOC

17  pursuant to Dept. Order 118 (effective 9/1/96) which relate to any aspect of the protective

18  segregation program, during the period 1/1/2000 to the present." "  (Motion, Doc. 161,

19  Exhibit 1 at 20.)  In Request 8, Plaintiff seeks "[a]ny agendas, minutes, notes], etc. prepared

20  for, or which memorialize all 'executive staff meetings' (as the term is used in Dept. Order

21  112 - effective 4/7/09) for the period 1/1/2006 to the present." "  (*Id.* at 21.)  In Request 9,

22  Plaintiff seeks the same information as in Request 8 "for all administrative meetings." (*Id.*)

23         Defendants object to each of these on the basis of security and confidentiality

24  concerns, and as to Request 8 and 9 on the basis of relevancy. (*Id.* at 20-21; Response, Doc.

25  183 at 17.)   Plaintiff argues that the information is sought to show that "the Director (and

26  others) were on notice regarding safety and capacity problems of the P.S. program."

27  (Motion, Doc. 161, Exhibit 1 at 21.)

28         The Court is not convinced that those records relevant to this matter would be

1    protected from production based on security and confidentiality concerns.

2           However, the only claim to which such information would conceivably relate is

3    Plaintiff's Count 8 where he alleges Defendants Markley and Schriro formed a policy or

4    custom of routinely denying requests for protective segregation status without regard to the

5    risks to individual inmates.  Plaintiff makes no effort to limit his request to information

6    concerning the issues he references, and it would appears that the issue papers, executive

7    staff meeting records and administrative meeting records he references would encompass a

8    wide range of issues wholly irrelevant to Plaintiff's claims.  Without any guidance, the Court

9    is unable to limit this request in a way that would result in only relevant information being

10   produced, without simply leaving it to Defendants to apply their own standards.  Therefore,

11   the Court finds these requests overly broad, and  no response to requests 7, 8, or 9 will be

12   required.

13          In Requests 11, 12, and 13, Plaintiff seeks various records concerning the certification

14   of various prison gangs as security threat groups.  Plaintiff argues these will show the

15   dangerousness of the prison gangs.  (Motion, Doc. 161, Exhibit 1 at 21-22.)  Defendants

16   argue that the information is irrelevant, particularly given Defendants' concession that

17   security threat groups are dangerous.

18          The Court finds these requests overly broad.  The only information directly relevant

19   to Plaintiff's claims would be risks associated with such gangs with regard to confidential

20   informants.  The Court would be shocked if any Defendant attempted to argue that prison

21   gangs did not pose a very real threat to confidential informants.  ADOC officials and

22   employees routinely plead with this Court to restrict access to records concerning

23   confidential informants for exactly that reason.  Moreover, Plaintiff makes no effort to

24   restrict his request to such issues, and makes no effort to assist the Court in limiting his

25   request.  Accordingly, no further response to Requests 11, 12 or 13 will be required.

26          With regard to the Request for Production served on **Defendants Palossari and**

27   **Markley**, the Court has concluded herein above that the responses were delinquent and any

28   objections asserted by Defendants have been waived.  Defendants make no arguments to

assert that the materials sought "far exceeds the bounds of fair discovery." *Fifty-Six Hope Rd. Music, Ltd.,* 2007 WL 1726558.

Upon review, however, the Court is concerned that some of the requests raise particular security concerns, not only as to Defendants and ADOC, but to law enforcement in general or other inmates, or to be blatantly beyond the scope of discovery.  Accordingly, the parties will be given an opportunity to be heard as to the following requests for production: Palossari requests 3, 4, 6, and 9; and Markley requests 2, 13, 14, and 15.

The Court notes the objection of Defendant Palossari as to Request 8, which seeks a summary of yard closures, stating that Defendants are not required to produce documents. In lieu of simply disposing of this request, the Court will treat it as an interrogatory, and direct Defendant Palossari to respond.

With regard to Request Number 1 to Defendant Markley, the request will be limited to communications with or concerning officers Williams and Masella, and may be redacted by Defendants to avoid specific risks to institutional security.

The Court also notes the objections asserted by Defendant Markley as to requests 8, 9, 10, 11, and 12..  These requests seek various administrative meeting records and "issue packages." The Court understands these requests to be limited to summary information concerning general levels of violence and related to the administration of he protective segregation program as a whole, and thus to exclude matters related to particular inmates or incidents.  So understood, they are significantly narrower than requests 7, 8, and 9 to Defendant Kaufman which the Court has found to exceed the bounds of discovery. Accordingly, the Court does not include these in the requests to which further briefing will be permitted.

Therefore, Defendant Palossari will be required to produce the documents or other items for inspection requested in Request 5, and to treat Request 8 as a n interrogatory, and respond thereto.  Defendant Markley will be required to produce the documents requested in Request Number 1, limited to communications with or concerning officers Williams and Masella, and may be redacted by Defendants to avoid specific risks to institutional security.

In addition, Defendant Markely will be required to produce the documents requested in Request numbers 3, 4, 5, 8, 9, 10, 11, and 12.

## 4.  ADDITIONAL DISPUTES

**Counsel Signatures** - Plaintiff complains that responses to interrogatories by Defendant Ramos were not signed by counsel of record, but by "Michele Forney," who Plaintiff does not know to be any attorney.  (Motion, Doc. 161 at 3.)  Defendants do not address this issue.  Michele. Forney is a member of this Court's bar, and was last reported as a member of defense counsel's firm,  the Arizona Attorney General's Office.  Moreover, Local Civil Rule 83.3(b)(4) explicitly authorizes counsel in a governmental law office to make the "occasional . . . filing of a pleading, motion or other document as associate counsel at the request of an attorney of record" without filing a notice of association of counsel.  Without more, the Court concludes that Ms. Forney's execution was authorized by defense counsel, and is binding upon defense counsel Gottfried as if personally signed by him.  No action will be taken on the basis of this complaint.

**Updates** - Plaintiff complains that Defendants have not fulfilled their obligation to update discovery responses. (Motion, Doc. 161 at 4.)  Plaintiff does not identify any specific failures.  Therefore the Court will not address this complaint.

**Verification** - Plaintiff complains that Defendant Cardenas' response to interrogatories were served without any verification. (Motion, Doc. 161 at 4.) Defendants do not address the issue.  Defendant Cardenas will be directed to serve on Plaintiff a verification of his previously served responses to interrogatories.

**Discussions Concerning Defendant Haley** - Defendants assert that Plaintiff has refused to communicate with them concerning remaining disputes related to discovery requests to Defendant Haley.  Plaintiff denies the claim.  The discovery requests to Defendant Haley are not a subject of the instant motion to compel, and are not addressed in this Order.

**5.  AWARD OF COSTS; SANCTIONS**

Plaintiff requests an award of costs and sanctions.  Defendants do not respond.  Federal Rule of Civil Procedure 37(a)(5)(A) mandates the payment of a successful movant's "reasonable expenses incurred in making the motion, including attorney's fees," unless the movant failed to attempt informal resolution, the failure to respond or objections were not substantially justified, or other circumstances makes an award unjust.  Rule 37(a)(5)(C) permits an apportionment where a motion is partially successful.  The Court finds that, while some of Defendants objections have been sustained, that on the whole Plaintiff's motion has been justified and Defendants' conduct has reflected a substantial and ongoing violation of the spirit and letter of the rules concerning discovery.  The Court therefore finds that none of the exceptions in Rule 37(a)(5)(A) apply, and that an award of all of Plaintiff's expenses is appropriate.

Fortunately for Defendants, Plaintiff is unrepresented, and thus the award of costs is not significant, being limited to only his costs of stationary, copies, postage, etc.  Plaintiff has had to engage in the filing of 225 pages and mail four separate packages to the Court and Defendants in connection with the motion (5 copies each (Plaintiff, Court, Judge, Defendants, Conformed) of Doc.s 161 (34 pages) and 171 (11 pages)).  The Court estimates the costs of such supplies, etc. at $77.50 ($0.30 per page plus $10 in mailing and other suplies), and in light of the limited amount of such costs in the face of the costs of further briefing, will make a conditional award in such amount, subject to the submission of a notice by either party providing a different calculation.

Rule 37(d) provides for an award of sanctions where a party fails to serve responses, objections etc., to interrogatories or requests for production.   Although it is apparently not a settled matter in this circuit, authorities suggest that Rule 37(d) only applies where there is a complete failure to make discovery, not merely a partial or belated response.  *But see N. Am. Watch Corp. v. Princess Ermine Jewels,* 786 F.2d 1447, 1450 (9th Cir. 1986) (belated compliance with order compelling discovery ineffective to avoid sanctions).

Here, Defendants failed to provide any responses to interrogatories and requests for

1   production served on Defendants Palossari and Markely until after Plaintiff's motion was

2   filed, some nine months after their due date. "[O]nce a motion for sanctions under Rule 37(d)

3   has been made, the delinquent party cannot deprive the court of the authority to impose

4   sanctions by then making the response to discovery requests that should have been made

5   earlier. 8B Fed. Prac. & Proc. Civ. § 2291 at n. 20(3d ed.).

6   While Defendants have pled oversight, Plaintiff plainly alerted Defendants to their

7   failure to respond to these requests in his original Motion to Compel, filed October 15, 2009

8   (Doc. 94 at 4 (referencing lack of response to interrogatories and requests for productions

9   served 8/18/09 and 9/16/09)). Any legitimate claim to oversight terminated with that filing.

10  While the Court ultimately denied the motion on the basis of Plaintiff's failure to attempt

11  informal resolution first, the Court also specifically ordered the parties to confer "about the

12  discovery disputes raised in Plaintiff's motion to compel."  (Order 10/20/09, Doc. 97 at 2.)

13  Accordingly, the Court concludes that an award of sanctions against Defendants

14  Markley and Palossari is appropriate.

15  Rule 37(d)(3) directly references the sanctions in Rule 37(b)(2)(A)(I) through (vi),

16  which includes such things as finding facts established, evidence precluded, pleadings

17  stricken, judgment entered, etc. The rule also recognizes the appropriateness of an award of

18  fees and costs, which would be duplicative of the expenses provided for above.

19  Without copies of the interrogatories to Defendant Palossari, crafting of a complete

20  sanction would be impossible.  Accordingly, the Court will direct the filing of such

21  interrogatories, and will take the nature of sanctions under advisement until they are filed.

22  **IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel Discovery, filed

23  June 3, 2010 (Doc. 161) is **GRANTED** to the extent of the relief provided herein.

24  **IT IS FURTHER ORDERED** that Defendants Ramos, Bartos, Palossari, and

25  Kaufman are deemed to have admitted the allegations in the Requests for Admissions

26  previously served upon them by Plaintiff.

27  **IT IS FURTHER ORDERED** that Defendant Kaufman shall serve on Plaintiff

28  responses to Plaintiff's Interrogatory number 4 served on such Defendant.

**IT IS FURTHER ORDERED** that, with the exception to Interrogatory number one to Defendant Markley, Defendants Palossari and Markley shall serve on Plaintiff responses to any of Plaintiffs Interrogatories to such Defendant to which such Defendant objected.

**IT IS FURTHER ORDERED** that Defendant Markely shall respond to Plaintiff's Interrogatory Number 1 by providing current work addresses for service on such Defendants, and where only residential addresses are available to so designate.

**IT IS FURTHER ORDERED** that Defendant Bartos shall serve on Plaintiff responses to Plaintiff's Interrogatory numbers 6, 7, 10, 11 and 13 served on such Defendant, with the clarification that Plaintiff is referring in Interrogatory number 13 to the persons responsible for scheduling medical appointments.

**IT IS FURTHER ORDERED** that Defendant Ramos shall serve on Plaintiff responses to Plaintiff's Interrogatory numbers 1, 2, 3, 4, and 7 served on such Defendant.

**IT IS FURTHER ORDERED** that Defendant Ramos shall either: (1) serve upon Plaintiff an admission that the named individuals were known to the Arizona Department of Corrections to be powerful members of prison gangs; or (2) show cause for their failure to do so, and to propose alternative means to provide Plaintiff the information he seeks while minimizing the security risks.

**IT IS FURTHER ORDERED** that Defendants shall serve on Plaintiff copies of the documents requested in Plaintiff 's Request for Production to Defendants generally, numbers 6, 9, and 12.

**IT IS FURTHER ORDERED** that as a response to Plaintiff 's Request for Production to Defendants generally, number 4, Defendants shall serve on Plaintiff copies of the documents from whatever personnel or similar file specifically related to the designated officer, where such records are normally maintained, the performance appraisals and disciplinary records identified in Request 4 as to the named Defendants only, in redacted form, with unredacted copies filed under seal.

**IT IS FURTHER ORDERED** that as a response to Plaintiff 's Request for Production to Defendants generally, number 8, Defendants shall file with the Court, under

1  seal, both the redacted and the complete and unredacted copies of Plaintiff's Protective

2  Segregation file.  The Court will review these and make a further order as to whether

3  additional production will be required.

4      **IT IS FURTHER ORDERED** that as a response to Plaintiff 's Request for

5  Production to Defendants generally, number 9, Defendants shall serve on Plaintiff copies of

6  the records sought in Request 9, but may redact the records as discussed herein.

7      **IT IS FURTHER ORDERED** that as a response to Plaintiff 's Request for

8  Production to Defendants generally, number 15, Defendants shall either: (1) serve on

9  Plaintiff an admission that a riot occurred between black inmates and white inmates on

10  Buckley Unit on February 18, 2008;  or (2) shall serve a response to the following

11  interrogatory: "Identify the date of any riots or similar disturbances occurring between black

12  inmates and white inmates occurring on Buckley Unit between the dates of January 31, 2008

13  and March 18, 2008."

14      **IT IS FURTHER ORDERED** that Defendant Kaufman shall serve on Plaintiff

15  copies of the documents requested in Plaintiff 's Request for Production to such defendant,

16  numbers 1, 2, 3, 4, and 5.

17      **IT IS FURTHER ORDERED** that as a response to Plaintiff 's Request for

18  Production to Defendant Kaufman number 6, Defendant Kaufman shall serve on Plaintiff

19  copies of the documents from whatever personnel or similar file specifically related to the

20  designated officer, where such records are normally maintained, the performance appraisals

21  and disciplinary records identified in Request 6 as to the named Defendants only, in redacted

22  form, with unredacted copies filed under seal.

23      **IT IS FURTHER ORDERED** that Defendant Palossari shall serve on Plaintiff

24  copies of the documents requested in Plaintiff 's Request for Production to such defendant,

25  number 5.

26      **IT IS FURTHER ORDERED** that in lieu of a response to Plaintiff's Request for

27  Production to Defendant Palossari, number 8, Defendant Palossari shall serve on Plaintiff a

28  response to the interrogatory: "Provide a summary of all yard closures for Buckley

1   Unit/"Blue" side (ie. Side with buildings one and two), stating reasons for closure, from

2   February 8, 2008 to March 15, 2008."

3       **IT IS FURTHER ORDERED** that Defendant Markley shall serve on Plaintiff copies

4   of the documents requested in Plaintiff 's Request for Production to such defendant, numbers

5   3, 4, 5, 8, 9, 10, 11, and 12.

6       **IT IS FURTHER ORDERED** that Defendant Markley shall serve on Plaintiff copies

7   of the documents requested in Plaintiff 's Request for Production to such defendant, number

8   1, limited to communications with or concerning officers Williams and Masella, which may

9   be redacted by Defendants to avoid specific risks to institutional security.

10      **IT IS FURTHER ORDERED** that Defendants shall have fourteen days from the

11  filing of this Order to file a brief asserting any arguments that Plaintiff's Request for

12  Production to Defendant Palossari, numbers 3, 4, 6, and 9, and to Defendant Markely,

13  numbers 2, 13, 14, and 15 should be restricted despite Defendants' waiver of any objections.

14      **IT IS FURTHER ORDERED** that  Defendant Cardenas shall serve on Plaintiff a

15  verification of his previously served responses to interrogatories.

16      **IT IS FURTHER ORDERED** that Defendants responses ordered herein above shall

17  be served on Plaintiff (or responses to orders to show cause filed) within fourteen days of the

18  filing of this Order.

19      **IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure 37(a),

20  that within twenty-one days of the filing of this Order, Defendants shall pay to Plaintiff the

21  sum of $77.50 as the costs of the motion to compel, unless within fourteen days of this Order

22  either party files a notice setting forth an alternative  calculation of such costs.  In the event

23  such a notice is filed, the other part(ies) shall have seven days from the service of such notice

24  to respond thereto.

25      **IT IS FURTHER ORDERED**, pursuant to Federal Rule of Civil Procedure 37(d)

26  granting sanctions against Defendants Palossari and Markley, the nature of such sanctions

27  being taken under advisement.

28      **IT IS FURTHER ORDERED** that within seven days of the filing of this Order,

1    Defendants shall file with the Court a copy of Plaintiff's interrogatories to Defendant

2    Palossari.

3

4    DATED: September 17, 2010                    _____
                                                              JAY R. IRWIN
5                                                      United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28